In the Matter of the Judicial Settlement of the Accounts of Proceedings of FRANK CURTISS and FREDERICK DE BILLIER, as Executors and Trustees, etc., of ABIJAH CURTISS, Deceased.

WILLIAM C. JOHNSON and Others, Appellants; FRANK CURTISS and Another, as Executors and Trustees, etc., of ABIJAH CURTISS and Others, Respondents.

*Will — commissions allowed to the same persons as executors and also as trustees — executors' commissions on securities delivered over in specie — commissions allowed to the trustees on their resignation — not on principal, nor on proceeds of real property — apportionment of commissions — assessments on real property chargeable to principal.*

Where a testator gives to his executors his residuary estate in trust to pay over its income to the use of his wife and children during their natural lives, he thereby creates a trust, the duties pertaining to which, although they may, for the reason that the trust is for support and maintenance, for a time run with the executorial duties, must finally survive the executorial duties; in such case the duties of the executors and those of the trustees are separate and distinct, and double commissions are allowable.

There is no power in the court to deny to executors or trustees the commissions fixed by law, except for misconduct on their part.

Where trustees, who are also executors of an estate, are allowed by the court to resign as trustees, they may be properly allowed commissions as executors in case, as such, they have fully administered the estate, but will be denied commissions as trustees upon the principal of the trust fund.

Where executors elect to transfer securities to themselves, as trustees, instead of converting them into cash, they are entitled as executors to commissions upon their value, which, if not otherwise fixed, is to be determined by the inventory.

Where, although the legal title to real estate and a power of sale are given to executors, it is evident from the terms of the will, that the power was given to them only to be exercised for the purposes of a trust conferred upon them, and not to be exercised by them as executors (except for the payment of debts or legacies), commissions can be allowed to them thereon, only in their capacity as trustees, and where they apply for leave to resign the trust, no commissions will be allowed to them as trustees, upon the proceeds of land sold under such a power.

*Semble*, that assessments for local improvements levied upon real property, belonging to a trust fund, are chargeable against principal and not to income.

Where the residuary estate has been fixed and ascertained by the decree of the surrogate, upon an accounting by the executors, the acceptance by the executors, to be held by them under a trust created by the will, of securities belonging to the estate, constitutes a distribution of the estate by the executors.

A testamentary trustee may apply to the court for leave to resign under section 2814 of the Code of Civil Procedure, but an executor cannot thus resign, and can be relieved from his duties only by an application, under section 2689 of the Code of Civil Procedure, to have his letters testamentary revoked.

Where one of two trustees has had almost the entire management of the trust estate, it is proper to award to him two-thirds of the commissions allowed to both trustees.

APPEAL by William C. Johnson and others from a decree of the Surrogate's Court of the county of Westchester, entered in said Surrogate's Court on the 28th day of March, 1896, settling the accounts of the executors and trustees of the estate of Abijah Curtiss, deceased, and also from an interlocutory decree of said court entered in said clerk's office on the 2d day of March, 1896.

*John Q. A. Johnson* and *William P. Fiero*, for the appellants.

*B. F. Blair*, *Ralph E. Prime* and *Henry Thompson*, for the respondents.

Decree affirmed upon the opinions of the surrogate of Westchester county, with costs to all parties payable out of the estate.

The following are the opinions of the surrogate of Westchester county:

SILKMAN, S.:

The parties in interest unanimously consent to the resignation of Frederick de Billier as executor and trustee, and with equal

unanimity oppose or regret the resignation of Frank Curtiss, the other executor and trustee. While the reasons given by the latter for relinquishing his trust are not such as would necessarily entitle him to be relieved, it seems unwise to compel an unwilling trustee to continue in office when his duties can be equally well performed by others.

Both of the trustees will be permitted to resign, but upon condition that they waive commissions as such trustees upon the principal of the trust estate.

It would not be fair to burden the beneficiaries with the payment of double commissions by reason of the action of trustees in resigning, dictated by their own convenience and business interests.

The matter of filling the office thus made vacant has been carefully considered by the court in view of the fact that some of the beneficiaries desire the appointment of a trust company as trustee, and some do not.

There are certain matters, viz., the sale and disposition of the real estate and the investment of the proceeds, which seem to demand the appointment of an individual trustee, while the probable long duration of the trust is urged as a reason for the appointment of a trust company. The former reason seems the more potent.

The court will appoint Mr. Peter J. Elting, vice-president of the Citizens' National Bank of Yonkers, as sole trustee, who will give a bond for the faithful performance of his trust with a surety company as surety.

The beneficiaries will thus have the benefit of the management of a careful business man as well as the same guaranty as to the safety of the trust fund as is afforded by a trust company.

The point made by one of the parties, that an administrator with the will annexed should be appointed, is not well taken for the reason that the entire estate seems to have been administered by the executors, except the real estate, and that is devised to the trustees, and the power of sale is to them and their successors.

An examination of the account shows that assessments upon the real estate for local improvements have been charged to income instead of principal. This error should be corrected in the decree to be entered.

Full commissions upon income will be allowed to the retiring

trustees; a supplemental account may be filed with the surrogate or a reference had to take the same.

The decree will be entered upon notice to all parties.

SILKMAN, S.:

The court, upon the application of the petitioners, permitted their resignation; but upon condition that trustees' commissions upon the principal of the trust estate be waived. The authority for imposing such a condition is found in the case of *Matter of Allen* (96 N. Y. 327).

The court intended that the petitioners should have commissions as executors, but none as trustees, upon the principal of the trust. It was directed that the decree to be entered should be upon notice, and now the settlement of the decree to be entered is before the court for consideration.

It is urged by the special guardians with much insistence:

*First.* That the petitioners would not be entitled in any event to commissions in the two capacities, as executors and as trustees, because, as is claimed, the functions and duties of executor and trustee co-exist and run together, and that the will does not provide for separate and successive duties.

*Second.* That the decree entered on the 17th day of June, 1891, is not conclusive as to the allowance of commissions, because the life beneficiaries only were made parties to the proceeding, the infant *cestui que trust* not having been cited; and

*Third.* That the duties to be performed under the will are not duties which can be performed by a substituted trustee, but must be performed by an administrator with the will annexed.

The testator, by the seventh clause of his will, provided as follows: " All the rest, residue and remainder of my estate, both real and personal, of whatsoever nature, and wheresoever situated, I give, devise and bequeath unto my executors, hereinafter named, their survivors, successors and assigns, in trust, however, to take the same into their possession, to convert the same into money without needless sacrifice, subject to the exceptions above set forth, to invest the same in such securities as they may from time to time see fit, whether they are the securities recognized by law for investment by executors and trustees or not, to continue in their discretion any investment which I have made, and to dispose of the same as follows, viz.: The said

residuary estate shall be divided into two equal parts to be separately invested and known as funds number one and two.

"Fund number one shall, for purposes both of division of income and principal, be divided into shares; one share for each of my surviving children, and one share for each child of mine that shall have died before me leaving issue, and for the purposes of such subdvision and apportionment the amount of any balance appearing on my books at my death against any child of mine, or any sum which shall be owing to me, except as above released, shall be considered, not as a debt but as an advancement, and shall be counted as cash in making up the apportionment aforesaid, and the share of each child shall be less by such amount than it otherwise would be.

"I direct my executors to pay over or apply the net income of each child's share, ascertained as above stated, to his or her use, during the term of his or her natural life, except that no more than fifteen hundred dollars a year shall be paid or applied to the use of my son Frederick during his minority. I also authorize and empower them or the survivor of them, or their successors in the trusts, in their discretion, to make to each child advancements out of the principal of each one's share so held in trust for them respectively, as may be deemed for their highest good in the following sums:"

Testator then names the times at which the part of the principal may be advanced to his children respectively. He then provides: "The net income of the respective sums so held in trust for my children shall be paid to them or applied to their use during the term of their natural lives, for their maintenance and support, the principal, or so much thereof as shall remain at their respective deaths, to be paid or transferred to their heirs or next of kin."

The testator then provides as to fund No. 2 as follows: "The net income of Fund Number Two shall be paid over, as the same accrues, to my wife, Mary E. Curtiss, during her life, for her own use absolutely — after her death, or in case she shall reject this provision and claim dower instead, the income and principal, both of said Fund Number Two and of the other property mentioned in this Will, not specifically devised or bequeathed, shall be disposed of in the same manner as Fund Number One, but the amount of advancements to my children, respectively, shall not be increased thereby."

The testator then, by the eighth clause of his will, provides: "The legal title to all my real estate, subject to the provisions of this will, shall vest in my executors and trustees, and they are hereby authorized and empowered to sell and convey, lease and in general deal with the same in their discretion."

He then provides that the property which his wife is given the use of for a period of years shall not be sold without her consent, and that property specifically devised to his son Frederick shall not be sold unless he refuse to accept the same upon the terms provided, and further provides that the distributive shares of any of the distributees might be valued and set off in lieu of sale and distribution of the proceeds.

Testator then by the ninth clause nominates and appoints "my brother, Frank Curtiss, and my friend, Frederick de Billier, executors of this my last will and testament."

It is claimed that the duties under the provisions above quoted are so mingled with the duties of executorship that there is an intention evident on the part of the testator not to separate the offices of executor and trustee, and that the legal conclusion from such provisions is that the duties and functions run together and are inseparable, and that the executors and trustees named are entitled to commissions in the capacity of executors only.

In this claim I think the special guardians are in error. While it is true that the testator uses the term executors when, perhaps, it would have been more appropriate to have used the term trustees, the use of the term executor or trustee does not necessarily define the character of the office. Whether they are to act in the capacity of executors or that of trustees is to be determined by the functions which they are to perform. The duties of an executor are usually simple; the burial of the deceased, the collection of his assets, the payment of his debts and legacies and the distribution of the residue to those entitled thereto as residuary legatees, heirs at law or next of kin. The distribution of the residue may be immediate, or it may be postponed and paid in installments or by way of annuity, or paid to trustees for the use and benefit of beneficiaries named. The retention by executors of any portion of the estate upon a trust provided for is a distribution of that part, as much so as if the same had been paid to other persons as trustees. If paid to a trus-

tee or retained by the executor as trustee, the distribution, to be valid, must be under one of the trusts authorized by the Revised Statutes. Bearing in mind the simple duties of an executor, and the fact that the duties of a trustee must be those in the execution of a trust authorized by statute, we will have no difficulty in determining where the executorial duties leave off and the trustee's duties begin.

In this case the testator has given his residuary estate to his executors in trust, to pay to or apply to the use of his wife and children the income thereof during their natural lives. This is a trust duty pure and simple, and depends upon the Revised Statutes for its validity. While it may be true that, for a certain period, the duties of the executors and of the trustees co-existed and ran together by reason of the fact that, the trust being for the support and maintenance of the testator's wife and children, they were, therefore, entitled to the income from the testator's death, nevertheless, the running together of such duties lasted only until the ordinary executorial duties had been fulfilled and the amount of the residue of the estate established. The Code provides for the compensation of executors (§ 2730), and also for the compensation of testamentary trustees separate from that of executors (§ 2802). It is clear from the authorities that, where it is contemplated that the executors' duties are to end and the trustees' duties are to begin, double commissions may be allowed, one commission to the executors and another commission to the trustees. (*Laytin* v. *Davidson*, 95 N. Y. 263.) In fact, under the provisions of the Code as they exist, there is no power to deny such commissions, except for misconduct on the part of the executor or trustee.

The facts in the case of *Laytin* v. *Davidson*, where double commissions were allowed, are similar to those in the case before us. It was said in that case that the duty of distribution into shares and to receive and apply the income of the several shares to the use of the beneficiaries respectively, could not be performed until the residue given to the executors in trust to divide into shares and pay over and apply the income of the several shares to the testator's wife and children had been ascertained. In the case before us the residue was ascertained by the decree of the surrogate upon the accounting of the executors in 1891. I have carefully examined

the case of *McAlpine* v. *Potter* (126 N. Y. 285), relied upon by the
special guardians, but do not think the facts in that case admit of
its being cited or of its being an authority in this. There the tes-
tator gave to his trustees all his real and personal estate in trust for
the purposes named, and to retain his estate entire and undivided,
except as provided for; and then provides for the payment by his
trustees of his funeral expenses, debts, taxes, etc. There were no
duties to be performed by the executors as such, and there was no
residuary estate to be ascertained. The duties were to be performed
by the trustees from the beginning. Judge FINCH says: "At its
very outset it makes the executors either wholly and continuously
such, or wholly and continuously trustees, for in its first sentences it
gives the entire estate in trust, and directs the 'executors and trustees
hereinafter named' to retain it undivided till the period of distribu-
tion, and meanwhile to pay funeral expenses, debts, accruing taxes,
repairs, reasonable insurance, one fixed and definite annuity, and
aliquot parts of the net accruing income until the final distribution."
It is a proper criticism of the will under consideration in *McAlpine*
v. *Potter* (*supra*), to say that it appointed trustees only, and that
there were no duties to be performed by executors. Here the
duties of executors and trustees are separate and distinct, and in such
a case the law not only premits but directs the allowance of double
commissions.

We are then brought to the point that the allowance of commis-
sions by the surrogate in the decree of June, 1891, is not conclusive
upon the infants represented by the special guardians, because such
infant *cestuis que trust* were not made parties thereto. The mere
statement of the position of the special guardians carries with it
the answer that, as to such parties, the court must now review the
allowance of commissions upon principal. All the parties inter-
ested in the income were made parties to the proceeding, and are
consequently bound by the decree. It is urged that the executors
were not entitled to commissions allowed upon securities possessed
by the testator at the time of his death and retained by the execu-
tors and trustees, but which might have been converted into cash in
order to determine the cash value of the residuary estate. I dis-
agree with the position of the special guardians as to the right of
the executors to commissions upon the value of these securities

received by them and retained by them as trustees under the trusts contained in the will. The trustees were legaters and devisees of the entire residuary estate, and as such had a right to elect to take it in the form in which it was left by the testator, provided it was unnecessary to convert it for the purpose of paying debts and legacies. Such election does not deprive executors of commissions thereon; nor does the fact that the same persons are executors and trustees impair such right to commissions. (*Matter of Moffat*, 24 Hun, 325; *Matter of Mason*, 98 N. Y. 536; *Phœnix* v. *Livingston*, 101 id. 451; *In re Willets*, 112 id. 289.) It would be impolitic for the law to deny to executors commissions under such circumstances, because to do so might invite the disposal of investments judiciously made by the testator, for the purpose only of entitling such executors to commissions upon the proceeds. It is the policy of the law to remove this temptation.

It must, therefore, be held that the executors have the right to have the securities considered as cash for the purpose of computing their commissions. There has been no judicial determination, however, as to the value of these securities in a proceeding in which all the parties interested could have been heard as to such value; their value, therefore, can only be considered as it has been fixed by the appraisers upon the inventory and appraisal made under the order of the surrogate.

I do not understand that the case of *McAlpine* v. *Potter* (*supra*) holds contrary to the views expressed. As has been stated, the will in that case provided for the functions of trustees only, and directed the estate to be held entire and undivided until disposed of as provided. The court held that the period of distribution had not arrived, and, until that time arrived, no commissions could be allowed upon the securities which came into the hands of trustees. The language of Judge FINCH clearly distinguishes the case from the present one. He says: "The bulk of the estate came to the executors already invested and in the form of securities which have not been turned into money. No law justifies the allowance of one-half commissions upon their estimated value in advance of their conversion into money or its equivalent. * * * A time will come when the allowance may be entirely just and proper. That will be when the securities have been turned into money for the purpose of

payment, or have been accepted by the legatees as cash without being converted." In the case before us the trustees as residuary legatees accepted the securities, and it must be assumed that they were of the value determined by the official appraisers, and were taken at that value.

I am, however, of the opinion that the executors are not entitled as such executors under the provisions of testator's will to any commissions upon the real estate sold. The title to this real estate passed to the trustees under the devise of the rest and residue of the testator's property. There was no necessity for nor purpose to be served by a sale of the realty by the executors. The executors had no right to deal with it except as it should become necessary for them to convert it for the purpose of paying debts and the legacies provided for in the will. While it is true that the testator provides in the eighth clause that "the legal title to all my real estate, subject to the provisions of this will, shall vest in my executors and trustees," the language used must not be construed in its literal sense, but according to testator's evident intention to give the title to his executors as trustees for the purposes of the trust. The eighth clause must be read in connection with the seventh, in which he gives all the rest, residue and remainder, both real and personal, to his executors, their survivor and successors, in trust, to take the same into possession and to convert the same into money. The sale of the real estate was a duty to be performed by the trustees and not by the executors, and commissions can be allowed only upon the proceeds of the real estate to the executors as trustees, and as I have decided that the trustees shall be allowed to resign only upon waiving their commissions as trustees upon the principal, whatever executors' commissions may have been allowed in the former decree upon such proceeds of the real estate sold must be disallowed.

As to the point taken that there should be an administrator with the will annexed appointed, I cannot agree with the special guardians. The duties of the executors have been performed, and the residuary estate ascertained for the purpose of the trust, although it may not have been sold and converted into cash and reinvested. There remain only trust duties to be performed.

I have examined the case of *Greenland* v. *Waddell* (116 N. Y. 234), relied upon by the special guardians. The facts in that case

were very different from those here under consideration. In that case the will under consideration contained a power in trust given to the executors to sell and dispose of the testator's real and personal property and to distribute the proceeds, one-third of which only they were to hold under a valid trust; a clear case of power in trust only except as to one-third, as to which they had the legal title. Powers in trust are to be exercised by executors, and not by trustees. Mr. Curtiss, however, gave his entire residuary estate to his executors as trustees under a valid trust, and they were possessed not only with a power of sale, but the legal title as well. I think the cases are clearly distinguishable.

This proceeding, as appears by the petition, is an application on the part of the testamentary trustees for leave to resign, under the authority of section 2814 of the Code. The petitioners cannot resign as executors. From such duties they can only be relieved by an application to have their letters testamentary revoked, under the authority contained in section 2689 of the Code.

My conclusions are, therefore, upon the objections by the special guardians to the decree proposed by the petitioners :

*First.* That the duties of executors and of trustees under the will of testator are clearly separate and distinct, and the petitioners were entitled to full commissions as executors when the residuary estate was ascertained, and would have been entitled to another full commission as trustees had they continued to fulfill their duties as such.

*Second.* That the petitioners were entitled to commissions as executors upon the securities which came into their hands from the testator, and were retained by them and held by them as trustees as investments.

*Third.* That no commissions should have been allowed upon the proceeds of the real estate sold.

The commissions to which the executors were entitled upon their previous accounting must be based upon the following statement of account : The executors are chargeable with the amount of the inventory, $282,323.85, less the assets uncollected and undisposed of, $5,670.75, leaving a balance of $276,653.10, upon which balance each executor was entitled to a commission of $2,941.53. The amount of commissions upon income allowed upon the former

accounting does not appear to be separated from the gross amount of commissions allowed. If the amounts had been separately stated, that decree would have been conclusive as to income, because all the beneficiaries interested in the income were parties to the proceeding.

It is, therefore, necessary to determine now what commissions the executors were entitled to upon such income, either as such executors or as trustees. The income of the personal property seems to have been $29,228.16, and the income of the real estate $11,564.91. The account covered the period from October 24, 1888, to April 30, 1891. I find commissions on such income to be the sum of $582.93, to be divided between the executors. The total amount of commissions, therefore, to which the executors were together entitled on the former accounting as executors and trustees is the sum of $6,465.99, of which $5,883.06 is chargeable to principal and $582.93 to income. Upon the present account I compute the commissions to which the trustees are entitled upon income to be $1,453.72. As the estate seems to have been managed almost entirely by the trustee Curtiss, two-thirds of the latter sum is awarded to him.

No final decree, however, can be entered at the present time. An interlocutory order may be entered declaring that certain reasons exist for accepting the resignation of the petitioners as trustees upon the condition imposed, directing the payment of all money and securities belonging to the trust, and the delivery of all books, papers and other property of the trust to the county treasurer, and directing that the petitioners bring into court an account of their proceedings under such order, as well as since the date of the account filed herein, to the end that a decree may be made finally settling their accounts and forever discharging them and appointing a new trustee.

This would seem to be the correct practice under the Code of Civil Procedure (§§ 2814, 2818).

The final decree may provide for the payment of the costs and expenses of this proceeding out of the moneys so to be deposited.